614 A.2d 684

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jacquet BAZEMORE, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 26, 1991.

Decided Sept. 16, 1992.

Lester G. Nauhaus, Public Defender and Shelley Stark, Chief–Appellate Div., Office of the Public Defender, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Claire C. Capristo Deputy Dist. Atty., Kemal A. Mericli and Scott A. Bradley, Asst. Dist. Attys., Pittsburgh, for appellee.

George S. Leone, Asst. Dist. Atty., Philadelphia, for Dist. Attys. Ass'n, amicus curiae.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

The issue presented in this appeal is whether the transcript of prior testimony from a preliminary hearing of an unavail-

able Commonwealth witness should be admissible at trial where the Commonwealth failed to disclose to the defense vital impeachment evidence regarding this witness prior to the preliminary hearing.

On August 13, 1987, a criminal complaint was filed against appellant charging him with criminal attempt to commit burglary.[1] A preliminary hearing was held in this matter on November 2, 1988. Appellant was represented at the preliminary hearing by counsel. Melvin Hauser testified on behalf of the Commonwealth during the preliminary hearing. Indeed, Mr. Hauser was the sole Commonwealth witness presented on that date. While counsel for appellant cross-examined the witness during the preliminary hearing, she was unaware or had not been informed that Mr. Hauser had made a prior inconsistent statement to the police; that he had a criminal record; and that the Office of the District Attorney was, at that time, contemplating the filing of criminal charges against Mr. Hauser for homicide and conspiracy in connection with the same incident giving rise to the complaint against Bazemore.

At a subsequent pre-trial hearing, inquiry was made of Mr. Hauser regarding whether, if called at trial, he would testify. He unequivocally invoked his Fifth Amendment right against self-incrimination. The Commonwealth then sought a ruling from the trial court declaring Mr. Hauser unavailable on the basis of his assertion of his Fifth Amendment right. The Commonwealth indicated that it would seek to admit the testimony of Mr. Hauser given at the preliminary hearing.

Appellant filed a motion *in limine* seeking to preclude the Commonwealth's use, at trial, of Mr. Hauser's preliminary hearing testimony. Following an evidentiary hearing, the trial court granted the motion *in limine*. Reconsideration of that order was denied and the Commonwealth then appealed to the Superior Court which vacated the order granting the motion *in limine*. This appeal followed.

1. 18 Pa.C.S. § 901(a)

Appellant disputes the ruling that Mr. Hauser is "unavailable" to testify at trial. Further, he argues that, even if Hauser is deemed "unavailable," his prior recorded testimony should be inadmissible because appellant was denied a full opportunity to cross-examine Mr. Hauser during the preliminary hearing due to the Commonwealth's failure to provide the defense with complete and vital information concerning Hauser.

Under both our federal and state constitutions a criminal defendant has a right to confront and cross-examine witnesses against him. *Commonwealth v. McGrogan*, 523 Pa. 614, 568 A.2d 924 (1990) (collecting cases). However, it is well established that an unavailable witness' prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the defendant had counsel and a full opportunity to cross-examine that witness at the prior proceeding. *Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977). A witness who invokes his or her Fifth Amendment privilege is deemed "unavailable" for the purpose of testifying provided the court first determines that the witness' concern with self-incrimination is legitimate. *McGrogan*, 523 Pa. at 621, 568 A.2d at 928. In this Commonwealth, the privilege against self-incrimination is liberally construed and will be permitted when a witness has reasonable cause to apprehend danger from answering questions put to him or her in a judicial proceeding. *Rodgers*, 472 Pa. at 456, 372 A.2d at 780–81.

In the instant matter, Mr. Hauser testified at the preliminary hearing that upon returning home, he found appellant in his apartment; began fighting with appellant; grabbed appellant's gun; pointed the gun at appellant and fired several shots at appellant. Clearly, such testimony has the potential to be incriminating.[2] Accordingly, the Superior

2. Indeed, subsequent to giving this testimony, Melvin Hauser was charged with criminal conspiracy and criminal homicide in connection with the death of Elbert A. Williams, appellant's cousin, who was shot and killed during the incident occurring at Hauser's residence on August 13, 1987. Hauser was also charged with aggravated assault

Court was correct in concluding that Hauser was "unavailable."

■ Having concluded that Hauser is, indeed, unavailable, we must now determine whether appellant had a "full opportunity" to cross-examine Hauser during the prior proceeding.[3] As noted above, the use of prior recorded testimony where a witness is unavailable and where the defendant had counsel and an opportunity to fully cross-examine the witness at that prior proceeding, has been found not to be in violation of the Sixth Amendment right of confrontation. *See Commonwealth v. McGrogan*, 523 Pa. 614, 568 A.2d 924 (1990). Just what suffices to establish "full opportunity" to cross-examine in the context of an unavailable witness where the Commonwealth has failed to disclose relevant impeachment evidence prior to the initial testimony is, however, an issue of first impression for this Court. The Commonwealth would have us find that the key element is the *opportunity* to cross-examine the witness at the prior proceeding. The Commonwealth argues that because the record here establishes that appellant was afforded an opportunity to cross-examine Hauser at the preliminary hearing and did, in fact, cross-examine him at length, appellant's right of confrontation was not infringed. We do not agree.

This Court has repeatedly recognized the vital role that cross-examination plays, especially in a criminal setting.

based upon allegations that he shot appellant in the hand during the same incident. These charges were, however, eventually dismissed as a result of appellant's refusal to testify against Hauser at his preliminary hearing. The Commonwealth notes in its brief that appellant has since agreed to testify against Hauser and the charges have thus been refiled.

3. Appellant also argues that he was "effectively" without counsel at the preliminary hearing and, therefore, the third element of the test for determining the admissibility of the prior testimony was not established. Specifically, he argues that because the evidence of which prior counsel was unaware was so critical to cross-examination, the failure of counsel to utilize such evidence constitutes ineffectiveness and that where counsel is ineffective, the defendant is essentially "without counsel." Appellant's argument is, however, wholly without merit. Appellant did, indeed, have counsel at the preliminary hearing. Moreover, counsel cannot be deemed ineffective for failing to utilize information of which she did not have the means or opportunity, at that stage of the case, to discover.

*Commonwealth ex rel. Buchanan v. Verbonitz*, 525 Pa. 413, 581 A.2d 172 (1990); *see also, Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986). Moreover, we have recognized the importance of providing the defense, at trial, the opportunity to examine prior statements of a Commonwealth witness of which the Commonwealth has possession, finding that examination of such statements provides the defense "a *fair* opportunity to cross-examine the witness." *Commonwealth v. Hamm*, 474 Pa. 487, 496, 378 A.2d 1219, 1223 (1977) (emphasis added).

This court again addressed the notion that the opportunity to cross-examine must be *fair* given the circumstances of the particular matter in order for such cross-examination to be deemed adequate in *Commonwealth v. Mangini*, 493 Pa. 203, 425 A.2d 734 (1981). In *Mangini*, we noted that the rule permitting prior recorded testimony of an unavailable prosecution witness at a later trial where the defendant was present at the prior proceeding and had an opportunity, through counsel, to cross-examine the witness, "is not absolute and must, when the situation arises, be weighed against countervailing principles."

> "The real basis for the admission of testimony given by a witness at a former trial is to prevent the miscarriage of justice where the circumstances of the case have made it unreasonable and unfair to exclude the testimony. It naturally follows that testimony from the former trial should not be admitted if to do so would result in a miscarriage of justice." 29 Am.Jur.2d Evidence, § 738, Evidence at former trial or proceeding—Generally.

493 Pa. at 210 n. 6, 425 A.2d at 738 n. 6. As we noted in *Mangini*, the exception for admission of prior testimony is "predicated on the 'indicia of reliability' normally afforded by adequate cross-examination." But where, as here, that "indicia of reliability" is lacking, the exception is no longer applicable. Id. 493 Pa. at 213, 425 A.2d at 739.

Although *Mangini* discusses the use of prior *trial* testimony, and not prior *preliminary hearing* testimony, the distinction is irrelevant for our purposes. Whether prior testimony

was given at trial or at any other proceeding, where, as here, admission of that prior testimony is being sought as substantive evidence against the accused, we conclude that the standard to be applied is that of *full and fair opportunity* to cross-examine.

Applying this standard to the case *sub judice*, it is clear that appellant was denied a full and fair opportunity to cross-examine Hauser at the preliminary hearing so as to preclude the use of that testimony at trial. At the time of the preliminary hearing, defense counsel was not aware that Hauser had given a prior *inconsistent* statement to the police nor was she made aware that the Commonwealth was contemplating the filing of criminal homicide, conspiracy and aggravated assault charges against Hauser, which charges arose out of the same incident giving rise to the charges at issue in the hearing. In addition, counsel was unaware of Hauser's prior criminal record.

The Commonwealth argues that the fact that appellant was unaware of this precise impeachment evidence is irrelevant because the "record plainly establishes that cross-examination was utilized to fully test the recollections of the witness and to sift the conscience of the witness" and because "counsel was not *restricted* from delving into any of the matters which have raised the concerns of the trial court." One is hard pressed to find just how defense counsel was "not restricted" when the Commonwealth failed to provide this information to the defense. Of course, defense counsel was able to cross-examine Hauser generally at the preliminary hearing, but because she did not have knowledge of Hauser's prior inconsistent statement, she could not impeach his credibility through the use of that statement. Thus, contrary to the Commonwealth's contention, the record does not establish that the cross-examination employed by defense counsel at the preliminary hearing, no matter how extensive, "fully tested" Hauser's recollection when, in fact, Hauser had given a different version of the events of the evening in question on a prior occasion. If that same testimony could now be used at trial, appellant would forever be denied the opportunity to confront Hauser with his

prior statement.[4] Given the significance of Hauser's testimony, as evidenced by the Commonwealth's certification in the Statement of Jurisdiction in its brief to the Superior Court that the order barring the use of his testimony effectively terminates the prosecution of appellant, the credibility of Hauser is undoubtedly of vital importance in this case.

Moreover, it appears that the Commonwealth disbelieved its own witness.[5] Hauser testified at appellant's preliminary

**4.** The Commonwealth submits that, at trial, appellant will be permitted to introduce the prior inconsistent statement of Hauser through the testimony of the police officers to whom the statement was made and thereby argue the impeachment value of such. In support of this proposition, the Commonwealth relies upon two Superior Court decisions, *Commonwealth v. Smith*, 380 Pa.Super. 619, 552 A.2d 1053 (1988), and *Commonwealth v. Davis*, 363 Pa.Super. 562, 526 A.2d 1205 (1987), both of which held that prior inconsistent statements of an unavailable witness were admissible for purposes of impeachment via the testimony of the person to whom such statements were made.

The *Smith* and *Davis* decisions—and the possibility that Hauser's prior inconsistent statements might come into evidence through the testimony of others—are, however, inapposite to the issue presented in the instant case. The mere opportunity to impeach an unavailable witness indirectly is obviously not the same thing as the opportunity to cross-examine (and impeach) the witness directly. Had the defense in this case had the opportunity to confront Hauser directly and to cross-examine him directly with the benefit of the vital withheld information, Hauser may have recanted his prior testimony or he may have made other responsive statements or reactions which would have strengthened appellant's defense by casting doubt upon Hauser's credibility or his prior inconsistent account of the circumstances in question. The introduction of such impeaching information indirectly is clearly an inadequate substitute for a full and fair opportunity to examine the witness himself or herself.

**5.** While there is no evidence that the Commonwealth acted improperly in this case, we do take this opportunity to remind prosecutors throughout the Commonwealth that Pennsylvania Rule of Professional Conduct 3.3(a)(4) expressly provides that "[a] lawyer shall not knowingly ... (4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures."

The Commonwealth argues in its Brief to this Court that "... by presenting the testimony of a witness, whether actual or recorded, the Commonwealth does not vouch for the credibility of that testimony." This is an incomplete statement of the Commonwealth's obligations. While it is not the Commonwealth's duty to make the fact-finder's decision who to believe and who not to believe, it *is* the obligation of lawyers for the Commonwealth—as it is the obligation of every lawyer in this Commonwealth—not to present any testimony to the court that

hearing that he shot appellant in self-defense. Nevertheless, the Commonwealth filed charges against Hauser for that exact conduct. If the Commonwealth believed Hauser's initial testimony, no such charges would have been filed against him. To allow the Commonwealth to now use that testimony which it obviously disbelieved, as a basis for convicting appellant without appellant having the opportunity to test the credibility of that witness, would clearly result in a miscarriage of justice.

The Commonwealth submits that as the prior statement of Hauser was not yet discoverable at the preliminary hearing stage, the Commonwealth had no duty to disclose that statement. We are mindful of the rules of discovery governing criminal prosecutions and by our holding today do not seek to abrogate those rules. Rather, our holding is limited to the facts *sub judice* and to a determination of what constitutes "full and fair" cross-examination of a now unavailable witness where the defense has been denied access to vital impeachment evidence either at or before the time of the prior proceeding at which that witness testified.

Accordingly, we do not, today, impose upon the Commonwealth a duty to disclose that which it is not obligated by law to disclose. Furthermore, we are cognizant of the fact that the Commonwealth will not necessarily know that a particular witness may, indeed, subsequently become unavailable. Nevertheless, where as here, the Commonwealth knows, but does not disclose to the defense at any time prior to preliminary hearing cross-examination of a witness, that the witness has made an inconsistent prior statement and that witness then becomes unavailable to testify at trial, the Commonwealth must suffer the consequences in electing not to disclose that information which is necessary to afford defense counsel the opportunity for a full and fair cross-examination. As we noted in *Commonwealth v. Wallace,* 500 Pa. 270, 455 A.2d 1187 (1983), "[t]he prosecutor, whose duty of course is to seek justice, not merely to convict, ... has an affirmative and continuing duty to disclose exculpatory information to the

they know to be false and to correct false testimony that comes to their attention after the fact but prior to "the conclusion of the proceeding." Pennsylvania Rule of Professional Conduct 3.3(b).

defendant and to correct false testimony of a witness." (citations omitted).[6] Moreover, "when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure [on the part of the Commonwealth] of evidence affecting credibility" violates due process. *Id.* 500 Pa. at 276, 455 A.2d at 1190.

For all the foregoing reasons, we conclude that to permit introduction, at trial, of the prior recorded testimony of this witness would result in denying appellant an adequate opportunity to test the veracity of this witness at the prior proceeding and thus, was denied a full and fair opportunity to cross-examine.[7] Accordingly, we reverse the order of the Superior Court and reinstate the order of the trial court.

PAPADAKOS, J., files a concurring opinion.

PAPADAKOS, Justice, concurring.

It goes without saying that under the federal and state Constitutions, a defendant has a right of confrontation which includes the absolute right to adequate cross-examination. When, in the early stages of a prosecution, the defendant, while exercising due diligence, does not have all the informa-

6. *See also* Pennsylvania Rules of Professional Conduct 3.3(a)(4), 3.3(b), and 3.3(d).

7. We note that the Superior Court, in a related case, *Commonwealth v. Kemp*, No. 00843 Pittsburgh, 1988, *allocatur discontinued*, February 9, 1990, addressed this exact issue and reached the opposite conclusion from that which it reached in the case *sub judice*. The defendant therein, Mr. Kemp, was charged with the murder of Mr. Williams, the man killed at Hauser's residence on August 13, 1987. Appellant, Mr. Bazemore, testified at the inquest in *Kemp* but, following the filing of the instant charges, invoked his Fifth Amendment privilege, refusing to testify at Kemp's trial. The defendant then filed a motion *in limine* to preclude the Commonwealth from using Bazemore's prior testimony which motion was granted by the trial court. On appeal by the Commonwealth, a panel of the Superior Court, including thereon a panel member in *Commonwealth v. Bazemore*, 397 Pa.Super. 637, 571 A.2d 498 (1989) (memorandum opinion), concluded that Bazemore's prior testimony should be suppressed because the defense had been denied a full opportunity to cross-examine Bazemore as a result of the Commonwealth's failure to disclose, before cross-examination of Bazemore at the inquest, a prior inconsistent statement made by Bazemore. The facts in *Kemp* and the case *sub judice* are indistinguishable and the findings made by the panels, inconsistent.

tion upon which to base a meaningful cross-examination, then it cannot be said that the defendant has exercised his constitutional right to confrontation.

The facts in this case clearly show that the defendant has been denied a full and complete right of confrontation. Although counsel had the opportunity to cross-examine Hauser at the preliminary hearing, that cross-examination was severely restricted by the lack of full knowledge of Hauser's background and prior inconsistent statements. Counsel cannot be faulted for not having this information at hand during the early stages of the prosecution. And even if we were to fault counsel for being unprepared with this knowledge, then the defendant was not receiving effective assistance of counsel.

The mere recitation of Hauser's background and prior inconsistent statements, if permitted, cannot have the same impact as a live performance before a jury and cannot fulfill the defendant's right of confrontation.

I do not believe it is necessary to reinvent the wheel by citing and reviewing precedents that have always held that a defendant must be afforded a full, fair and adequate right of cross-examination. The use, at trial, of the transcript of Hauser's testimony at the preliminary hearing under the facts of this case would unquestionably violate the defendant's constitutional rights.